**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ )<br>IK PYO HONG )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>WASHINGTON METROPOLITAN AREA )<br>TRANSIT AUTHORITY, *et al.* )<br>)<br>Defendants. )<br>_____ ) | Civil Action No. 04-1403<br>(EGS) |

**MEMORANDUM OPINION**

Plaintiff Ik Pyo Hong worked for the Washington Metropolitan
Area Transit Authority ("WMATA") as a transportation engineer
from 1992 to 2004.  Plaintiff is suing WMATA and its general
counsel, Cheryl Burke, (collectively, "defendants"), challenging
defendants' determination that plaintiff is permanently barred by
WMATA's conflict-of-interest provision from accepting a Project
Director position at the Virginia Department of Rail and Public
Transportation (DRPT).  Defendants have filed a Motion to Dismiss
pursuant to Federal Rule of Civil Procedure 12(b)(1), on the
basis that defendants are immune from these types of suits under
the WMATA Compact.

Upon careful consideration of the defendants' motion, the
responses and replies thereto, and for the following reasons, the
Court concludes that defendants' motion will be **GRANTED** and this
case will be **DISMISSED WITH PREJUDICE.**

## I.   Background

WMATA was established in 1966, when Congress approved an interstate compact (the "Compact") between Maryland, Virginia, and the District of Columbia; the goal of the signatories to the Compact was to improve transportation for the Washington, D.C. metropolitan region.  *See* D.C. Code Ann. § 9-1107.01, *et seq.* (West 2001).  To that end, the Dulles Corridor Rapid Transit Project ("Dulles Corridor Project") is a joint venture involving the U.S. Department of Transportation, the Virginia DRPT, private developers, and WMATA, and seeks to extend WMATA's metro line to Dulles Airport.  *See* Complaint ("Compl.") at ¶ 9; Defendants' Motion to Dismiss ("Def. Mot.") at 2.  The structure of the Dulles Corridor Project is such that the federal government will provide half of the funding, contingent on approval of an environmental impact statement and other requirements and the Virginia DRPT will be the grantee of the federal funds.  Def. Mot. at 2-3.  DRPT has entered into an agreement with a joint venture known as the Dulles Transit Partners ("the Partners"), who will construct the rail extension.  *Id.* at 3.  WMATA will oversee the Partners' work.  *Id.*

Until March of 2004, plaintiff was the Director of the WMATA Office of Extensions.  Compl. at ¶ 10.  In this capacity, plaintiff's responsibilities included completion of the environmental impact statement for the Dulles Corridor Project.

Compl. at ¶ 10.  Defendants contend, and plaintiff does not refute, that his duties in 2003 also included serving as WMATA's representative in negotiations between DRPT and the Partners, and between WMATA and DRPT.  Def. Mot. at 3-4.

In October 2003, DRPT issued a solicitation seeking a Project Director for the Dulles Corridor Project.  Compl. at ¶ 12.  Plaintiff applied for the position and was selected, but, as a result of WMATA's determination that plaintiff is permanently barred from employment with DRPT on any projects involving the Dulles Corridor Project, DRPT apparently canceled its offer of employment.  Compl. at ¶¶ 13-16.

WMATA's general counsel, Cheryl Burke, concluded that because plaintiff had personally participated on high level work involving WMATA and the DRPT, it would be a conflict of interest for him to take the Project Director position at DRPT.  Def. Mot. at 6.  Ms. Burke also determined that plaintiff was permanently barred from such a position, pursuant to Section 6.06.02 of WMATA's Standards of Conduct regulations, which provides:

> Following termination of employment by WMATA, any person who was an employee, officer or agent of WMATA is permanently barred from working on any matter on which the person participated personally and substantially while employed at WMATA.

*Id.*

Plaintiff seeks declaratory and injunctive relief, claiming Tortious Interference with Prospective Business Advantage based

on what he claims is WMATA's erroneous legal opinion, which he
alleges has damaged his ability to obtain employment in his
field.  Compl. at ¶¶ 22-33.  Defendants have moved to dismiss the
suit on the grounds that WMATA is immune from tort actions
involving discretionary functions, such as employment decisions.

## II.  Standard of Review

Defendant moves to dismiss this action pursuant to Fed. R.
Civ. P. 12(b)(1), alleging that this Court lacks subject matter
jurisdiction over plaintiff's claims.  In the Rule 12(b)(1)
context, the plaintiff bears the burden of establishing the
Court's jurisdiction. *See, e.g., Tripp v. Executive Office of the
President*, 200 F.R.D. 140, 142 (D.D.C. 2001)*; Vanover v. Hantman*,
77 F. Supp. 2d 91, 98 (D.D.C. 1999) (citing *Pitney Bowes Inc. v.
U.S. Postal Serv.*, 27 F. Supp. 2d 15, 19 (D.D.C. 1998)). In so
doing, the plaintiff may rely on and the Court may consider
materials outside of the pleadings without converting a motion to
dismiss into a motion for summary judgment.  *See* Fed. R. Civ. P.
12(b)(1); *Land v. Dollar,* 330 U.S. 731, 735 n.4, 67 S. Ct. 1009
(1947) ("[W]hen a question of the District Court's jurisdiction
is raised, either by a party or by the court on its own motion,
... the court may inquire, by affidavits or otherwise, into the
facts as they exist."); *Teva Pharmaceuticals, USA, Inc. v. U.S.
Food and Drug Admin.*, 182 F.3d 1003, 1008 (D.C. Cir. 1999); *Artis
v. Greenspan,* 158 F.3d 1301, 1305-06 (D.C. Cir. 1998).

4

## III. Discussion

## A.   The Scope of WMATA's Immunity

As a Compact between Maryland, Virginia, and the District of Columbia, WMATA shares their sovereign immunity.  *See Beebe v. WMATA*, 129 F.3d 1283, 1287 (D.C. Cir. 1997); *Sanders v. WMATA*, 819 F.2d 1151, 1154 (D.C. Cir. 1987); *Morris v. WMATA*, 781 F.2d 218, 219-220 (D.C. Cir. 1986).  Section 80 of the Compact waives that immunity for certain types of torts committed in the performance of a proprietary function, but retains immunity for torts occurring in the performance of a governmental function.

> The Authority shall be liable for its contracts and torts and those of its Directors, officers, employees and agents committed in the conduct of any proprietary function, in accordance with the law of the applicable signatory (including rules on conflict of laws), but shall not be liable for any torts occurring in the performance of a governmental function.

*See* D.C. Code. Ann. § 9-1107.01(80).

> As the court in *Beebe* explained,

> [T]he immunity question often turns on whether the activity is 'discretionary' or 'ministerial,' a dichotomy employed by the Federal Tort Claims Act. ... To determine whether a function is discretionary, and thus shielded by sovereign immunity, we ask whether any 'statute, regulation, or policy specifically prescribes a course of action for an employee to follow.' ... If no course of action is prescribed, we then determine whether the exercise of discretion is 'grounded in 'social, economic, or political goals.' ... If so grounded, the activity is 'governmental,' thus falling within section 80's retention of sovereign immunity.

129 F.3d at 1287 (citations omitted).

5

**B.   Defendants' Determination that Plaintiff was Permanently Barred from Employment by DRPT on the Dulles Corridor Project**

1.   Plaintiffs' Claims Against WMATA

Defendants concluded that plaintiff was barred from work with DRPT on the Dulles Corridor Project because he had personally and substantially participated on Dulles Corridor Project work while working for WMATA.  Def. Opp. at 6.  Plaintiff argues that that legal determination regarding the conflict of interest and WMATA's decision to publish that determination to plaintiff's prospective employer, DRPT, was *ultra vires* and thus can be reviewed by this Court.  Pl. Opp. at 4-5.  Plaintiff also challenges the substance of WMATA's determination that the DRPT Project Director position would be a conflict of interest, contending that the environmental impact statement portion of the project had concluded and that the work he sought to do for DRPT was different in scope and kind from what he had done for WMATA. Pl. Opp. at 6.  Finally, plaintiff claims that WMATA's regulation section 6.06.02 is an invalid covenant not to compete.  Pl. Opp. at 9.

Defendants counter that there are strong public policy reasons for the post-WMATA employment restrictions plaintiff is challenging.  Defendants contend that these "revolving door" rules prevent actual or apparent conflicts of interest that erode public confidence in government and prevent favoritism, improper

6

influence, and corruption in government contracting.  Def. Mot.
at 8.  Defendants also maintain that plaintiff's work on the
Dulles Corridor Project went beyond the environmental impact
statement and that their "revolving door" limitations, common
throughout federal and state governments, fall within WMATA's
authority.  Def. Reply at 2-3.

2.   Plaintiff's Claims Against Defendant Cheryl Burke

     Plaintiff argues generally that the defendants' actions,
including the actions of General Counsel Cheryl Burke, were *ultra
vires* and therefore they are not shielded by immunity as
discretionary functions.  Pl. Opp. at 4.  Defendants, on the
other hand, contend that the Complaint alleges no wrongdoing by
Ms. Burke and does not allege that she was acting outside the
scope of her employment when she issued her legal opinion that
plaintiff was permanently barred under WMATA's regulations from
working for DRPT on the Dulles Corridor Project, and that
therefore the claims against her must be dismissed.

**C.   The Court Lacks Subject Matter Jurisdiction Over Plaintiff's
       Claims Against Defendants WMATA and Burke**

     This case is controlled by *Burkhart v. WMATA*, 112 F.3d 1207
(D.C. Cir. 1997) and *Beebe v. WMATA,* 129 F.3d 1283 (D.C. Cir.
1997).  Those cases compel this Court to dismiss plaintiffs'
Complaint against both defendants, for lack of subject matter
jurisdiction.

In *Burkhart*, a passenger sued WMATA after a physical altercation with a bus driver.  112 F.3d at 1209.  A jury found WMATA liable for negligent hiring, training, and supervision.  On appeal, WMATA claimed that it was immune from such suits.  The U.S. Court of Appeals for this circuit held that the negligence claims should have been dismissed.  *Id.* at 1217.  Specifically, the court stated

> The WMATA compact confers upon WMATA broad power to
> '[c]reate and abolish ... employments' and 'provide for
> the qualification, appointment, [and] removal ... of
> its ... employees without regard to the laws of any of
> the signatories,' ...; '[e]stablish, in its discretion,
> a personnel system based on merit and fitness,' ... and
> 'control and regulate ... the service to be
> rendered'...
>
> The hiring, training, and supervision choices that
> WMATA faces are choices 'susceptible to policy
> judgment.'  The hiring decisions of a public entity
> require consideration of numerous factors, including
> budgetary constraints, public perception, economic
> conditions, 'individual backgrounds, office diversity,
> experience and employer intuition.' ... Similarly,
> supervision decisions involve a complex balancing of
> budgetary considerations, employee privacy rights, and
> the need to ensure public safety. ... Such decisions
> are surely among those involving the exercise of
> political, social, or economic judgment.
>
> As a result, we conclude that the hiring, training, and
> supervision of WMATA personnel are governmental
> functions.

*Id* (citations omitted).

Six months after it decided *Burkhart*, the Court of Appeals for this circuit issued its opinion in *Beebe v. WMATA*.  In that case, an employee brought tort and contract claims - including

wrongful interference with employment relationship – after the
department within which he worked was reorganized and he applied
but was not selected for a particular position within the
reorganized department, but instead was given a different
position.  129 F.3d at 1286.

    After a discussion of governmental versus proprietary
functions and the holding in *Burkhart*, *id.* at 1287, the appellate
court concluded that

> [A]ll actions challenged by Beebe involved a large
> measure of choice, and we perceive no distinction
> between the discretion here and the hiring, training,
> and supervision of bus operators at issue in *Burkhart*.
> If anything, the activity in this case - reorganizing
> an entire office - involved even greater degrees of
> political, social and economic considerations.

*Id.* at 1288.  The court thus affirmed the district court's
dismissal of the tort claims.   *Id.*

    Importantly for the case presently before this Court, the
*Beebe* court also had to consider whether two WMATA officials sued
in their individual capacities for their involvement with the
reorganization were also immune from suit.   *Id.*  After noting
that the "scope of immunity of WMATA employees for torts
committed in the course of governmental or discretionary
functions is a road not well traveled," the appellate court
concluded that the individuals were also immune from suit.   *Id.*
at 1288-89.  The court specifically found that even the
intentional torts and the individuals' actions motivated by what

plaintiff claimed was personal animus, were related to their roles in the reorganization and that none of plaintiff's allegations came "even close to [the] extremes" where officials' actions are found to fall outside the scope of their official responsibilities. *Id.* at 1289.

Like the employment decisions at issue in *Burkhart* and *Beebe*, WMATA's conflict-of-interest and "revolving-door" rules involve choices, policy considerations, and "political, social, and economic considerations." It is not hard to imagine the kinds of considerations and competing interests that might go into developing and enforcing a regulation such as section 6.06.02. For example, on the one hand, WMATA wants to be able to attract qualified, highly-trained individuals for senior positions, and needs to be able to compete with private industry in doing so; a restrictive post-employment policy might deter otherwise-interested individuals from seeking such positions. On the other hand, WMATA must be concerned about public perception, loyalty, and the risk that private industry employers will "raid" WMATA seeking to lure WMATA employees away for any number of reasons, such as their experience, connections, and/or access to public officials. As defendants persuasively argue, plaintiff's case raises exactly these kinds of concerns because he represented and negotiated on behalf of WMATA with the very same

entity and on the very same project with whom he now seeks to work.

Thus, in accordance with *Burkhart* and *Beebe*, the Court concludes that WMATA's determination that plaintiff is permanently barred from working for DRPT as a Project Director on the Dulles Corridor Project is a discretionary function and WMATA is immune from plaintiff's claims.  Furthermore, the Court finds nothing in plaintiff's Complaint or pleadings that would support a finding that Defendant Burke was acting outside the scope of her employment when she issued the legal opinion at issue in this case.  *See Beebe,* 129 F.3d at 1289.  Therefore, Burke, too, enjoys immunity from this suit because she was engaged in a discretionary function.

**IV.  Conclusion**

For the foregoing reasons, the Court determines that defendants are immune from suit with regard to their legal opinion that plaintiff is permanently barred from employment with DRPT on the Dulles Corridor Project.  Accordingly, defendants' motion to dismiss is **GRANTED** and plaintiff's Complaint is **DISMISSED WITH PREJUDICE.**  A separate Order and Judgment accompanies this Memorandum Opinion.

**Signed:    Emmet G. Sullivan**
**            United States District Judge**
**            September 26, 2005**

Notice via ECF to all counsel of record.